| | |
|---|---|
| **GKG LAW, P.C.**<br>Edward D. Greenberg<br>David P. Street<br>Brendan Collins<br>1055 Thomas Jefferson St., NW<br>Suite 500<br>Washington, D.C. 20007-4492<br>Telephone:  (202) 342-5200 | **THE LAW OFFICES OF SANDRA GALE BEHRLE**<br>Sandra Gale Behrle<br>420 Lexington Avenue, Suite 300<br>New York, New York 10170<br>Telephone:  (212) 957-9000 |
| **HUSCH BLACKWELL LLP**<br>Daniel P. Jaffe<br>60 East 42nd Street, Suite 4600<br>New York, NY 10165<br>Direct:  212.485.9805<br>Fax:  314.480.1505 | **GONZALEZ DEL VALLE LAW**<br>Henry P. Gonzalez, LL.M.<br>1250 Connecticut Ave., N.W., Suite 200<br>Washington, DC 20036<br>Phone 202.973-2980<br>Fax 202.261-3534 |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>THE CONTAINERSHIP COMPANY (TCC) A/S,<br><br>        Debtor in a Foreign Proceeding.<br><br>THE CONTAINERSHIP COMPANY (TCC)A/S, acting by and through JØRGEN HAUSCHILDT, solely in his capacity as Foreign Representative thereof,<br><br>        Plaintiff,<br><br>-against-<br><br>All Parties Listed on attached Appendix A,<br><br>        Defendants. | Chapter 15<br><br>Case No. 11-12622 (SHL) |

**DEFENDANTS' OBJECTIONS TO FINDINGS OF FACT AND CONCLUSIONS OF LAW FOR REPORT AND RECOMMENDATION ON <u>OMNIBUS CROSS MOTIONS FOR SUMMARY JUDGMENT</u>**

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................................ ii

I.       The Service Contracts Are Illusory and, Therefore, Unenforceable ................................. 1

II.      No Genuine Issues of Material Fact Preclude Entry of Summary Judgment on Behalf of Defendants ........................................................................................................ 5

    A.    TCC Fraudulently Failed to Disclose the Threats Made by SIPG .................................. 5

    B.    TCC's Failure to Perform ............................................................................................ 10

Conclusion ................................................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Cases**

*Dalton v. Educational Testing Service*, 639 N.Y.S.2d 977, 87 N.Y.2d 384 (1995) ....................... 4

*Dennis Realty Corp v. Twersky*, 190 Misc. 936, 76 N.Y.S.2d 798 (Mun. Ct., 1947).................... 4

*Mejia v. City of New York*, 119 F. Supp. 2d 232 (E.D.N.Y. 2000).............................................. 10

*Merrill Lynch & Co v. Allegheny Energy, Inc.,* 500 F.3d 171 (2d. Cir .2007) ............................ 12

*Omega Precision Hand Tools, Inc. v. H. Alpers & Assocs., Inc.,* 49 A.D.2d 885,

373 N.Y.S.2d 215 (Sup. Ct. App. Div. 1975).................................................................................. 5

*PT Kaltim Prima Coal v. AES Barbers Point, Inc.*, 180 F. Supp. 2d 475 (S.D.N.Y. 2001)........... 4

*Strobe v. Netherland, Inc.,* 245 A.D. 573,

283 N.Y.S.2d 246 (Sup. Ct. App. Div. 4th Dep't New York 1935)................................................ 5

*Tornicello v. United States*, 681 F.2d 756 (Ct. Cl. 1982) .............................................................. 3

*United States v. Weinstein*, 452 F.2d 704 (2d Cir. 1971)............................................................. 10

**Rules**

Fed. R. Civ. P. 56 (c) ...................................................................................................................... 7

Local Civil Rule 56.1(d) ................................................................................................................. 7

**Treatises**

1 Samuel Williston & Richard A. Lord,

 A Treatise on the Law of Contracts § 4:21 (4th ed. 2007). ...................................................... 2, 3

The undersigned Defendants hereby file their objections to the Bankruptcy Court's Findings of Fact and Conclusion of Law for Report and Recommendation on Omnibus Motions for Summary Judgment dated April 28, 2015. ("Report and Recommendation"). Preliminarily, the Defendants concur with the Bankruptcy Court recommendation that the Defendants' Omnibus Motion for Summary Judgment be granted and Plaintiff's Omnibus Motion for Summary Judgment be denied based upon TCC having terminated its service and the plain language of Term 20 and Term 5 of the Service Contracts at issue. To the extent the District Court adopts the Bankruptcy Court's findings of fact and conclusion of law, that disposes of the case. Nonetheless, in order to preserve their rights, the Defendants assert the following objections to the Report and Recommendation, in order to preserve their rights.

## I.     The Service Contracts Are Illusory and, Therefore, Unenforceable

The Report and Recommendation finds that the Service Contracts at issue are not illusory because TCC agreed that it would transport the Defendants' Cargo at rates lower than its published tariff in exchange for the Defendants' commitment to ship a minimum volume of goods. Report and Recommendation at p. 16. The Report and Recommendation asserts that this is the *quid pro quo* for issuance of a service contract. *Id.* The Bankruptcy Court further concludes that the fact that TCC had discretion regarding whether to "roll" cargo did not render the contract unenforceable because under New York law there is an implied duty of good faith and fair dealing read into every contract which should be implied here to allow the contract to survive. *Id*. at 16-17.

The Bankruptcy Court's conclusion is incorrect because it ignores the express terms of the Service Contracts and because an implied duty of good faith and fair dealing cannot be read to contravene the plain language of the Service Contracts. Term 5 of the Service Contracts provides that in the event TCC refuses to offer space on its vessels to a shipper, the shipper's

1

only remedy is that its MQC is reduced.  Thus, TCC could refuse to perform for any reason, or no reason at all, and the shipper has no recourse.  No amount of wordsmithing can twist that into an obligation to perform.  Indeed, the drafter of the service contract for TCC himself admits that, by its plain language, if TCC simply refused to provide service, the shipper had no recourse against TCC.

Term 5 of the Service Contract specifically provides that:  *"The reduction in the minimum quantity commitment herein shall be the Shipper's exclusive remedy for Carrier's failure to provide space . . . and the Carrier shall not be liable to Shipper for any direct, consequential, or other damages relating to cargo delayed or not transported due to lack of available space . . . ."* (emphasis supplied).  Pursuant to this language, TCC had absolute discretion to refuse Defendants' cargo bookings to carry higher paying cargo, or for any other reason, with absolutely no consequence for TCC.

It is hornbook law that consideration is required from both parties to a contract and that lack of consideration renders a contract illusory.  1 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 4:21 (4th ed. 2007).  Where no consideration exists, the lack of consideration results in no contract being formed.  *Id.* § 7:11.  An illusory promise:

> . . . would not serve as consideration to support a counterpromise, regardless of how it were interpreted: either as meaning "I promise to perform if I choose,"' or "I promise to perform if I conclude to ratify," or "I promise to perform unless I choose to avoid the whole agreement on both sides." Under any interpretation, it is clear that the promise is illusory since by its terms its performance is at the option of the promisor, and the promisor may exercise this option without depriving itself of anything to which it was entitled before the formulation of the agreement . . . . It is well settled that a promise which reserves the option of performance to the promisor is insufficient to support a counterpromise."

*Id* § 7:13; s*ee also  Tornicello v. United States*, 681 F.2d 756 (Ct. Cl. 1982) ("[i]f what appears to be a promise is an illusion, there is no promise; like the mirage of the desert with its flowing water which yet lets the traveler die of thirst, there is nothing there.")

A plain reading of Term 5 of the Service Contracts makes clear that TCC actually committed to nothing in executing the contracts.  Thus, while on the one hand TCC purports that it will make space available to transport a specified amount of cargo, it vitiates that commitment by stating that a shipper's exclusive remedy in the event of a breach of the carrier's commitment is a reduction in the shipper's minimum cargo commitment.  This is *Williston's* prototype of an illusory contract, in which TCC only "promises to perform if [it] choose[s]."  TCC would have incurred no liability if it had sold all its vessels as soon as it signed the contracts, had failed to purchase or charter any vessels at all, had elected to cancel or limit its service, or had accepted higher paying cargo in lieu of Defendants' shipments.

Indeed, by its actions, TCC itself recognized that the contracts themselves were illusory and posed no obligation on it to perform.  From its launch, TCC sought to overbook its vessels, recognizing that it had no obligation to actually transport cargo on behalf of the Defendants.  Defendants' Omnibus Statement of Fact ("OSoF") 45-56.  TCC's Senior Vice President testified that if TCC executed a service contract that provided for an MQC of 1000 TEUs but TCC was only able to provide 500 TEUs, the only remedy for the shipper is a reduction in the MQC to the amount TCC actually provided.  OSoF 35.  There is no remedy for the shipper based upon TCC's failure to perform other than the reduction in the MQC.  *Id.*  Indeed, if the carrier simply refuses to provide service to the shipper, the shipper has no recourse against the carrier.  OSoF 36.  TCC further conceded that the term "service contract" is a misnomer because there is no defined service provided in TCC's service contract.  OSoF 37.  Thus, unlike TCC's "use it or

3

lose it" contract, which imposes a penalty based upon TCC's failure to perform, there is no such obligation in regard to TCC's standard service contract.  OSoF 38.

While under certain circumstances, courts will infer an obligation to perform in order to save a contract, "a contractual duty will not be implied when the absence of it is clearly expressed."  *Dennis Realty Corp v. Twersky*, 190 Misc. 936, 76 N.Y.S.2d 798 (Mun. Ct., 1947).  Indeed, the Report and Recommendation itself recognizes that under New York law, an implied covenant of good faith and fair dealing "can only impose an obligation consistent with other mutually agreed upon terms in the contract."  *Id.* at p. 24.  Thus, the Bankruptcy Court's attempt to save the contract from the effect of its plain terms by implying a duty to perform on the part of TCC that is flatly contrary to the express language of Term 5 of the Service Contract must be rejected.  *See, e.g., Dalton v. Educational Testing Service*, 639 N.Y.S.2d 977, 979, 87 N.Y.2d 384, 389 (1995) (duty of good faith and fair dealing cannot be implied so as to create duties inconsistent with express terms of the contract); *PT Kaltim Prima Coal v. AES Barbers Point, Inc.*, 180 F. Supp. 2d 475, 483 (S.D.N.Y. 2001) (duty of good faith and fair dealing cannot be used to create obligations independent of those agreed upon by contracting parties.) Having drafted the Service Contracts so as to insulate itself from liability based upon its failure to perform, and having drafted the contracts to provide it with a unilateral right to terminate with no liability, *see* Term 20, TCC cannot rely upon the duty of good faith and fair dealing so as to save the contracts from being found illusory.  Indeed, reading a duty of good faith and fair dealing into the Service Contracts so as to save them from their plain terms is particularly inappropriate here where TCC in fact simply stopped performing under the contracts and then sued its customers for not performing thereunder.

Further, while courts have recognized that a party's performance pursuant to a contract may constitute consideration which is lacking by its express terms, New York law is clear that

4

the promises of neither party are binding unless those of both are obligatory.  *Strobe v. Netherland, Inc.,* 245 A.D. 573, 283 N.Y.S.2d 246 (Sup. Ct. App. Div. 4th Dep't New York 1935).  Here, because by the express language of the Service Contracts, TCC was under no obligation to perform, no duty to perform can be imposed upon the Defendants.

The fact that there was partial performance under the contracts does not alter the conclusion that they are illusory and unenforceable.  New York law is clear that where one party is not obligated to perform or may terminate a contract at its whim without incurring any penalty, as TCC has done here, "in so far as it is executory, it is void for want of consideration."  *Strobe v. Netherland, Inc.,* 245 A.D. 573, 283 N.Y.S.2d 246, 254 (Sup. Ct. App. Div. 4th Dep't New York 1935).  Indeed, for the same reason that the plain language of TCC's contracts allows it to refuse to perform without penalty or recourse by the shipper, the contract must be deemed to confer upon the shippers the same right.  *See Omega Precision Hand Tools, Inc. v. H. Alpers & Assocs., Inc.,* 49 A.D.2d 885, 373 N.Y.S.2d 215, 217 (Sup. Ct. App. Div. 1975).

TCC made a calculated decision to draft the Service Contracts at issue so as to insulate itself from liability as result of its failure to perform.  Having done so, it cannot now properly seek to recover for the Defendants' alleged failure to meet the MQCs contained therein.  Similarly, having drafted the Service Contracts with Defendants to provide that it had a unilateral right to terminate the contract with no liability, *id.* at Term 20, TCC cannot seek to enforce the MQC against the shippers.

## II. No Genuine Issues of Material Fact Preclude Entry of Summary Judgment on <u>Behalf of Defendants</u>

### A. <u>TCC Fraudulently Failed to Disclose the Threats Made by SIPG</u>

The Report and Recommendation concludes that Genuine Issues of Material Fact render it impossible for the Bankruptcy Court to grant Summary Judgment on the grounds of fraudulent

5

inducement. Report and Recommendation at pp. 25-27.[1] The Defendants object to that proposed finding.

The Report and Recommendation recognizes that the Defendants moved for summary judgment based upon the fact that even before the launch of its service, TCC was informed by the Shanghai International Port Group ("SIPG") that SIPG would retaliate against shippers that shipped goods out of the Port of Taicang, rather than the nearby Port of Shanghai. *Id*. at p. 8. The Report and Recommendation further recognizes that the Defendants assert that the Port of Shanghai is a large and commercially important port that could negatively impact the Defendants' ability to transport goods, thus this would be important information to any non-vessel-operating common carrier ("NVOCC") or shipper transporting goods in the region. *Id*. The Report and Recommendation also recognizes that under New York law, there is a duty to speak if a party has material information whereby failure to disclose that information would render the transaction inherently unfair. *Id.* at 25-26. The Report and Recommendation nonetheless concludes summary judgment is not warranted due to fraudulent inducement because while TCC acknowledges having received threats from SIPG before launch there is a purported genuine issue of material fact as to whether the threats were directed solely to TCC or also to its customers. *Id.* at 26-27.

The Report and Recommendation's proposed conclusion is unsupported by the evidence in the record. Despite TCC's protestations to the contrary, the undisputed facts establish that before TCC entered into any of the Service Contracts at issue, it was expressly informed not only that SIPG would not tolerate its operating out of Taicang, but that SIPG would prevent forwarders and NVOCCs (such as Defendants) from booking and shipping with TCC. OSoF 60-

---

[1] Many of the individual Defendants filed separate motions for Summary Judgment which were not addressed in the Report and Recommendation. The individual Defendants reserve their rights in regard to those motions.

65. The record further reflects that TCC was alarmed that SIPG might use information it obtained from TCC's sub-agents against TCC's customers. OSoF 74.

TCC acknowledges that such information would have been important to shippers because Taicang is only a small port while Shanghai is one of the largest and most powerful ports in the world, through which a huge volume of cargo moves. OSoF 78-81. Thus, any rational NVOCC or freight forwarder would have been concerned if SIPG was going to hinder its ability to handle cargo through Shanghai. OSoF 80-83. Despite the importance of this information to its potential customers, and despite the fact that SIPG began carrying out its threats even before the vast majority of the Service Contracts were executed, TCC failed to disclose this information. OSoF 76, 82. TCC failed to do this despite the fact that its Senior Vice President admits that this information should have been disclosed in order to be "upfront and honest" in TCC's dealings with its customers and in order to keep them apprised of opportunities and risks associated with the contracts. OSoF 82-83. Indeed, ten months after SIPG had told TCC that it would destroy TCC if it tried to operate out of Taicang, and more than six months after TCC accused SIPG of engaging in mafia-like and gangsterish behavior, TCC instructed its agent to lie to TCC's customers and tell them that TCC's relationship with SIPG was "good." OSoF 64-65; 159-163.

A review of the Defendants' Statements of Material Facts reveal that they are based upon contemporaneous admissions of TCC or the sworn deposition testimony of TCC's senior personnel. The law is well established that in order to create a genuine issue of material fact, a party opposing summary judgment must cite to particular parts of materials in the record. *See* Fed. R. Civ. P. 56 (c); Local Rule for the Southern District of New York Rule 56.1(d). Rather than comply with that obligation, TCC repeatedly purports to "dispute" the fact asserted but fails to come forward with any citation to evidence to dispute it. For example, TCC repeatedly admits that emails or deposition testimony are accurately quoted but nonetheless seeks to dispute the

characterization of the documents. (ECF No. 266). Such generic objections fail to meet the requirements of the Federal Rules of Civil Procedure or of Local Rule 56.1(d).

To the extent TCC has come forward with any "evidence" to refute the Defendants' Statements of Undisputed Facts, it consists of the sworn statement of Franck Kayser, TCC's Chief Operating Officer. Thus, TCC seeks to establish that although SIPG admittedly made threats against TCC before the Service Contracts at issue were executed, SIPG did not make such threats against TCC's customers. This argument, however, is belied by contemporaneous documents that Mr. Kayser himself authored.

In seeking to justify its failure to disclose the threats posed by SIPG, Franck Kayser simply resorts to misrepresentations of the facts. First, he states that at his initial meeting with SIPG, SIPG never threatened to take action against TCC's actual customers. Kayser Dec. at ¶ 27. The contemporaneous documentation *written by Mr. Kayser himself*, however, reveals this statement to be untrue. In Mr. Kayser's communication of March 17, 2010, (Defendants' Exh. 12), he states that TCC threatened that: "*They will prevent any forwarder and customers to book and ship on our ships.*" Another email written in April of 2010, before the Service Contracts at issue were executed, further confirms that TCC was fully aware of the threat that SIPG posed not only to TCC but also to its customers. In that email, TCC's Vice President of Trade expressed concern that one of the TCC's proposed subagents, who had withdrawn from acting in that capacity due to threats from SIPG, would share information with SIPG "to be used against us *and our customers*." OSoF 74, Exh. 17. *See also* Defendants' Exh. 19 at p. 2 (TCC's CEO reporting to the Danish Consulate General that in April 2010 meetings with SIPG, NVOCCs were told that if they cooperated with the Taicang Port, "their business with SIPG would meet obstacles.") Quite simply, the evidence is overwhelming that before TCC entered into the contracts at issue it was fully aware that SIPG posed a significant threat to TCC and its

customers, and that TCC made a deliberate effort to hide that information from its prospective customers.

TCC is not entitled to simply make assertions, which are contradicted by their own contemporaneous statements and documents, and have the Court blindly accept them as creating a genuine issue of material fact.  Further, as reflected in the Defendants' Reply Brief (ECF No. 272 at pp. 7-15), the Sworn Statement of Franck Kayser is replete with other knowingly false statements flatly contrary to the contemporaneous documents.  Among these are astounding assertions that although SIPG explicitly told him in March of 2010 that SIPG would do everything possible to make sure that TCC could not operate successfully out of Taicang -- long before the Service Contracts were executed -- those threats "did not materialize."  Kayser Declaration at ¶ 29.  A review of Defendants' Omnibus Statement of Material Facts (OSoF 60-169), and the exhibits attached thereto, almost all of which were authored by TCC, and many of which were authored by Mr. Kayser himself, reveals the absurdity of that assertion.  Any fair reading of those documents inexorably leads to the conclusion that one of the primary reasons TCC failed was because of SIPG.  Indeed, in August of 2010, Franck Kayser himself wrote that that the situation was so bad that TCC was "cornered by SIPG and we have no other option than to lay down and die or fight."  OSoF 111.

Similarly, in his sworn statement, Mr. Kayser asserts: "[a]t no time did TCC ever represent or instruct our employees or TCC's agent to represent that TCC had a good relationship with the SIPG . . . ."  Kayser Dec. at ¶ 38.  Again, however, the contemporaneous documentation reveals this statement to be untrue.  OSoF 159 (Defendants' Exhibit 45.)  As reflected therein, when TCC's Senior Vice President asked Mr. Kayser what TCC should tell its customers about its relationship with SIPG, Mr. Kayser himself stated in February of 2011, "*I*

9

*think we should inform them that we are regularly meeting with SIPG and that relations are good. . . ."* Id.

Because Franck Kayser is willing to make sworn statements that are clearly false, they do not provide a basis for creating genuine issues of material fact that prevent a grant of summary judgment. As the Second Circuit observed when faced with willfully false testimony, "[s]uch disregard of his oath is enough to justify the belief that the witness is capable of any amount of falsification, and to make it no more than prudent to regard all that he says with strong suspicion, and to place no reliance on his mere statements." *United States v. Weinstein*, 452 F.2d 704, 713 (2d Cir. 1971); *see also Mejia v. City of New York*, 119 F. Supp. 2d 232, 260 (E.D.N.Y. 2000) (discrediting witnesses testimony because disregard of oath justified belief that witness is capable of any amount of falsification).

Given Mr. Kayser's documented untruths, his representations are entitled to no weight and should be disregarded. Instead, the simple truth, as one of TCC's senior executives acknowledges, is that SIPG posed a serious threat to Defendants and TCC had a duty to disclose that threat to them but failed to do so. OSoF 82.

### B. TCC's Failure to Perform

The Report and Recommendation concludes that although the Defendants have come forward with evidence regarding problems with TCC's services, a question of fact exists as to whether TCC was in material breach. Report and Recommendation at p. 28 ("While not necessarily disputing that these issues occurred to some degree, the Plaintiff disputes that they rose to the level of material breach.") The Defendants dispute this recommended finding that a genuine question of fact exists.

The Defendants have submitted substantial and compelling evidence that TCC ran an undercapitalized and slipshod operation that failed to provide the basic services the Defendants

10

contracted to receive, thus materially hindering Defendants' ability to sell TCC's service to their customers. TCC's most obvious failure was to terminate its services without notice before the end of the contract term. *See* OSoF 235. TCC has not and cannot dispute that fact. In addition, the undisputed evidence confirms that TCC cancelled almost half of its scheduled sailings in 2011. OSoF 228-235.

Moreover, although TCC had a contractual obligation to provide containers for transportation of Defendants' cargo; *see* Service Contract at Term 5; it admits it lacked sufficient containers to do so. OSoF 170-211, 218-222. Again, while TCC seeks to explain its dismal performance, it does not dispute that it lacked containers to transport cargo for significant periods of time during which it was contractually obligated to provide service. This time period included not only the first three months of the contract, but also again in January of 2011. OSoF 199, 207, 209, 218-222. Essentially, TCC contends that Defendants should pay TCC for not shipping cargo during extended time periods when TCC was admittedly unable to carry that cargo. The contracts do not provide that TCC should be paid for having tried, and failed, to render the services promised. Given these failures on its part, TCC cannot recover against Defendants for their alleged failures to perform.

In addition to these breaches, the undisputed facts show that TCC was simply incapable of having its vessels arrive and depart on schedule. TCC tries to gloss over these uncomfortable facts by asserting that "minor vessel delays" are a common problem for carriers. Such bland assurances, however, ignore the fact that the record is replete with evidence as to TCC's repeated delays in service, which was so bad that even its Vice President of Trade admitted in March of 2011 that "*what we have done in the past couple of months has been a disaster.*" OSoF 266-267. Its agent in China had to agree, "Yes, It's really a disaster." *Id.*

11

A mountain of evidence further confirms that this disastrous service resulted in TCC's losing its most important customers.  OSoF 266 ("*we have lost many important customers as a result*" of poor service); OSoF 241 (delayed sailing was a "disaster," that resulted in the loss of 'big support" from the ports of Taicang and Ningbo."); OSoF 244 (TCC admitting that due to its unstable performance, TCC's "customers were demanded by their customers to book with others . . . ."); OSoF 262-265 (TCC acknowledging that customers were increasingly complaining about TCC's schedule delays and that TCC had lost its largest electronics customers as a result). Indeed, the contemporaneous documents show not only that TCC lost its largest and most important customers as result of TCC's disastrous service performance but that TCC had to resort to lying about its transit time to try to induce customers to ship with it.  OSoF 261.  For TCC to sue Defendants for being unable to convince their customers to use TCC's substandard service is entirely without merit.

Under New York law, a party's performance under a contract is excused when the other party has substantially failed to perform its side of the bargain or, synonymously, when that party has committed a material breach. *Merrill Lynch & Co v. Allegheny Energy, Inc.,* 500 F.3d 171, 186 (2d. Cir. 2007).  A breach of contract is material if it goes to the root of the agreement between the parties. *Belsito Comm. Inc. v. Dell, Inc.*, 2013 WL 4860585 at * 7 (S.D.N.Y. 2013). Here, there can be no legitimate dispute that TCC substantially failed to perform when it not only prematurely terminated the service contracts, forcing the Defendants to scramble to  find other carriers to carry their cargo, but that it also failed to provide expected services throughout the life of the contract.

Because the undisputed evidence shows that: 1) TCC lacked sufficient equipment to carry cargo for the first three months of the contracts, and then again in the ninth month of the contracts; 2) TCC canceled sailings during eight separate weeks of the annual contract (and for

seven out of sixteen weeks of scheduled sailings in 2011); and 3) TCC's schedule reliability was so bad that even its trade manager and agents in China conceded that its service was a "disaster." OSoF 266-267, TCC cannot establish that it substantially performed under the contracts.

## Conclusion

For the reasons set forth above the Bankruptcy Court's Recommended Findings that: 1) the Service Contracts are not illusory; and 2) disputed issues of material fact preclude entry of summary judgment on behalf of the Defendants regarding TCC's fraudulent inducement and material breach of the Service Contracts, should be rejected.

Dated:  May 12, 2016                             Respectfully submitted,

By:_____

**GKG LAW, P.C.**
Edward D. Greenberg
David P. Street
Brendan Collins
1055 Thomas Jefferson St., NW
Suite 500
Washington, D.C. 20007-4492
Telephone:  (202) 342-5200

and

**THE LAW OFFICES OF SANDRA GALE BEHRLE**
Sandra Gale Behrle
420 Lexington Avenue, Suite 300
New York, New York 10170
Telephone:  (212) 957-9000

Counsel for Defendants: *O.E.C. Shipping Los Angeles, Inc., 11-02444; Apex Maritime Co., Inc., 11-02447; Argos Freight, Inc. dba Agility Freight, Inc., 11-02448; Topocean, 11-02450; U.S. United Logistics (Ningbo) Inc., 11-02452; Universal Shipping Inc., 11-02453; On Time Express, 11-02459; T-Z Cargo Limited, 11-02461; Multi-Trans Shipping Agency, Inc., 11-02462; Traffic Tech Int'l, 11-02463; CEVA Freight LLC dba CEVA Ocean Line, 11-02464; Interglobo North America, 11-02465; LCL Lines, 11-02466; Barthco International, Inc. dba OHL-Int'l, 11-02467; Wako Express (HK)Co.*

*Ltd., 11-02468; Global Forwarding Ltd., 11-02469; Pantainer Ltd. dba Pantainer Express Line, 11-02473; Winair Logistics, Inc. dba Airgoal Int'l USA, 11-02477; Orient Star Transport, 11-02478; American International Cargo Service, Inc., 11-02496; Seapassion Logistics Inc., 11-02517; STD Logistics Ltd., 11-02522*

**GONZALEZ DEL VALLE LAW**
Henry P. Gonzalez, LL.M.
1250 Connecticut Ave., N.W., Suite 200  Washington, DC 20036
Phone 202.973-2980
Fax 202.261-3534

Counsel for Defendants:  *Translink Shipping Inc., 11-02446; US Pacific Transport, Inc. (CASA), 11-02441*

**HUSCH BLACKWELL LLP**
Daniel P. Jaffe
60 East 42nd Street, Suite 4600
New York, NY 10165
Direct:  212.485.9805
Fax:  314.480.1505

Counsel for Defendants:  *Headwin Global Logistics (USA) Inc., 11-02472; Union Logistics, Inc., 11-02457; Roanoke Insurance Group, Inc. f/k/a Roanoke Trade Services Inc. (Pudong), 11-02451; Roanoke Insurance Group, Inc. f/k/a Roanoke Trade Services Inc. (Sinicway), 11-02475*

14

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 12th day of May 2016, I served via ECF, a copy of the foregoing document to the following:

Richard V. Singleton, II
Michael P. Smith, Esq.
Jeremy A. Herschaft
Blank Rome LLP
405 Lexington Avenue
New York, New York 10174-0208
RSingleton@BlankRome.com
MSmith@BlankRome.com
JHerschaft@BlankRome.com

_Brendan Collins_

Brendan Collins

## APPENDIX A

|     | Defendant | Adv. Proc No. |
| --- | --- | --- |
| 1.  | American International Cargo Service, Inc. | 11-02496 |
| 2.  | Apex Maritime Co., Inc. | 11-02447 |
| 3.  | Argos Freight, Inc. dba Agility Freight Inc. | 11-02448 |
| 4.  | Barthco International, Inc., d/b/a OHL-Intl. | 11-02467 |
| 5.  | CEVA Freight, LLC dba CEVA Ocean Line | 11-02464 |
| 6.  | Global Forwarding Ltd. | 11-02469 |
| 7.  | Interglobo North America Inc. | 11-02465 |
| 8.  | LCL Lines | 11-02466 |
| 9.  | Multi-Trans Shipping Agency, Inc. | 11-02462 |
| 10. | O.E.C. Shipping Los Angeles, Inc. | 11-02444 |
| 11. | On Time Shipping Line Limited | 11-02459 |
| 12. | Orient Star Transport Int'l Ltd. | 11-02478 |
| 13. | Pantainer Ltd. d/b/a Pantainer Express Line | 11-02473 |
| 14. | Seapassion Logistics Inc. | 11-02517 |
| 15. | STD Logistics | 11-02522 |
| 16. | Topocean | 11-02450 |
| 17. | TT Ocean Logistics, LLC | 11-02463 |
| 18. | T-Z Cargo Limited | 11-02461 |
| 19. | Universal Shipping Inc. (USI) | 11-02453 |
| 20. | U.S. United Logistics (Ningbo) Inc. | 11-02452 |
| 21. | Wako Express (HK) Co. Ltd. | 11-02468 |
| 22. | Winair Logistics, Inc. d/b/a Airgoal Int'l USA | 11-02477 |
| 23. | Translink Shipping Inc. | 11-02446 |
| 24. | US Pacific Transport, Inc. (CASA) | 11-02441 |
| 25. | Headwin Global Logistics (USA) Inc. | 11-02472 |
| 26. | Union Logistics, Inc. | 11-02457 |
| 27. | Roanoke Insurance Group, Inc. f/k/a Roanoke Trade Services Inc. (Pudong) | 11-02451 |

| 28. | Roanoke Insurance Group, Inc. f/k/a Roanoke Trade Services Inc. (Sinicway) | 11-02475 |